866 So.2d 380 (2004)
Clark DUFRENE and Catherine Dufrene
v.
IMPERIAL FIRE AND CASUALTY INSURANCE COMPANY, Alberta L. Williams and Rick's Custom, Inc. d/b/a Rick's Auto Collision Center.
No. 03-CA-1001.
Court of Appeal of Louisiana, Fifth Circuit.
February 10, 2004.
Rehearing Denied March 8, 2004.
*381 Melvin Ripp, Jr., Gretna, LA, for Plaintiffs/Appellants, Clark Dufrene and Catherine Dufrene.
Timothy F. Upton, Boudreaux & Upton, Metairie, LA, for Defendants/Appellees, Imperial Fire & Casualty Insurance Company.
G. Patrick Hand, Jr., the Hand Law Firm, APLC, New Orleans, LA, for Defendant/Appellee, Rick's Custom, Inc.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY and MARION F. EDWARDS.
SOL GOTHARD, Judge.
Plaintiffs, Clark and Catherine Dufrene, appeal a judgment of the district court that finds in favor of defendants and dismisses plaintiffs' negligence action. For reasons that follow, we reverse that judgment.
Plaintiff Catherine Dufrene's vehicle was damaged, while parked in front of her place of employment, when it was struck by a vehicle driven by Alberta Williams. Mrs. Dufrene's vehicle, a 1991 Ford Aerostar, was towed to Rick's Auto Collision Center (Rick's) for repair. About one month later the car was returned to the Dufrenes. Shortly afterward Mrs. Dufrene experienced trouble with the engine, and the vehicle was again returned to Rick's for repair. After the vehicle was returned the second time to the Dufrenes, it ran hot and ultimately became inoperable.
The Dufrenes filed suit against Alberta Williams, her insurer, Imperial Fire and Casualty Insurance Company (Imperial), and Rick's seeking damages for the vehicle. In the petition the Dufrenes allege that the vehicle had a blown head gasket necessitating an engine replacement. Petitioners seek repair or replacement of their vehicle. Imperial filed a cross-claim against Rick's. After a trial on the merits, the trial court ruled for the defendants, finding that there was no evidence of causation between the accident and the damage to the engine. It is that judgment that is the subject of this appeal.
Before trial, the parties settled the claim against Imperial as it applied to rental car costs of $1,589.94, while reserving their right to claim other damages. At trial certain exhibits were introduced by stipulation of the parties. Those exhibits included the police report of the accident, the original damage estimate of $2,306.40, and various correspondences.
Mrs. Dufrene testified that she parked her 1991 Aerostar van outside of her place of employment on August 23, 2001. Later in the evening, she was looking out of her office window and saw a car run into her van and push it into the vehicle parked behind the van. As a result of the collision, the front end of her van was *382 smashed, steam was coming out of the hood and water was coming out of the bottom. Police officers obtained insurance information from the driver and arrested her. Subsequently, Mrs. Dufrene telephoned the insurance company on the card, Imperial, and was told someone would contact her shortly. The next day Mrs. Dufrene spoke to Ms. Holly Stelly, representing Imperial, and told her about the accident. Mrs. Dufrene also told Ms. Stelly that the front end was smashed and there was fluid and steam emanating from the radiator. Mrs. Dufrene had the car towed to Rick's and Ms. Stelly authorized the repair work. About two weeks later, a representative of Rick's called to advise Mrs. Dufrene that the van was repaired. She picked up the car about 4:30 that afternoon. While stopped at a stoplight a short distance away, Mrs. Dufrene heard an alarm sound in the car and a light which indicated the vehicle was overheating. When the light turned green, she pressed the accelerator. She heard a loud "boom" and the engine killed. It would not re-start. Mrs. Dufrene called a friend, who helped her push the car off of the roadway. Subsequently, she had the car towed back to Rick's.
About three days later Mrs. Dufrene was told the vehicle was repaired. When she picked up the vehicle, Mrs. Dufrene questioned the mechanic about the cause of the problem. She was told that the radiator was empty, containing no fluid or coolant, and the starter was loose. Mrs. Dufrene was told that all problems were fixed. On the drive home, Mrs. Dufrene again experienced trouble with her van. The diagnostic indicators on the dashboard again showed the van was overheating. She filled the radiator with water and drove home. When she got home, Mrs. Dufrene re-filled the van's radiator and called Rick's, but got no answer. The next day the car started normally. However, as she began driving to work, the car overheated again. At work, she again filled the radiator and called Rick's. The mechanic told her to keep water in the radiator and bring the car in to the shop for repair the next morning. Mrs. Dufrene testified that she specifically asked the mechanic if she could drive the car to a meeting that night. He stated that she could drive the car as long as she was sure to keep water in the radiator. That night Mrs. Dufrene put water in the radiator and proceeded to her meeting. She explained that she had to drive from her office in Gretna to Loyola University on St. Charles Avenue in New Orleans for the meeting. Before she got to the meeting, the warning light on the dashboard again indicated the car was overheating. The van engine killed and would not restart. The radiator was refilled and Mr. Dufrene, who had come to rescue his wife, took the van home.
Subsequently, the Dufrenes had the car towed to two other repair shops for estimates. Copies of both estimates were sent to Imperial and Rick's. No further repairs were authorized or done and the van is still parked and unusable. The Dufrenes were forced to rent a vehicle for Mrs. Dufrene's use to replace the van. Ultimately, in October of 2001 Mrs. Dufrene leased a new vehicle for transportation.
Mrs. Dufrene testified that the accident and subsequent time when her van was not running normally were very inconvenient for her, causing her to miss work, meetings and social events.
She further testified that although she timely sent bills for her rental car to Imperial, nothing was paid until December 17, *383 2002[1]. However, because the check was tendered with a full release, Mrs. Dufrene did not cash the check. It was again tendered without a release in open court at the start of the trial on the matter in February 2003.
On cross-examination, Mrs. Dufrene stated that part of her claim of damages is $3,438.27 which is the estimated cost of repair to the van. She further stated that Imperial paid all repairs performed by Rick's.
Clark Dufrene testified that he arranged the towing of his wife's car and made arrangements with Rick Combel of Rick's to repair the vehicle. Mr. Dufrene discussed the damage with Mr. Combel. Mr. Dufrene specifically told Mr. Combel to check the cooling system because the coolant had leaked out of the front of the vehicle after the accident. Also, Mr. Dufrene expressed his concerns about the transmission because the van was parked at the time of impact and was pushed back several feet.
Mr. Combel explained that he only did body work; however, he agreed to have a mechanic evaluate the damage to the cooling system and the transmission. After the first attempt at repair, Mr. Dufrene called Mr. Combel and explained that the mechanical repairs were not done. Mr. Combel told Mr. Dufrene that he found a radiator leak which was repaired and the starter was loose. Mr. Combel also told him there was no damage to the transmission. Mr. Combel told Mr. Dufrene he made the mechanical repairs and road tested the vehicle on the Westbank Expressway.
Mr. Dufrene spoke to Mr. Combel again after two mechanic shops agreed the engine needed to be replaced. Mr. Combel would not take responsibility for the mechanical problems because he only did body work. Mr. Dufrene testified that he notified Ms. Stelly of the problem several times after the second unsuccessful attempt to have the car repaired at Rick's. Ms. Stelly refused the claim, informing Mr. Dufrene that the mechanical repairs should have been taken care of by Rick's. The remainder of Mr. Dufrene's testimony corroborates that of his wife concerning the need to lease a vehicle for her use.
Francis Boudreaux, the insurance adjuster who was assigned to the Dufrenes' claim, testified that he inspected the Dufrenes' van for damage after the accident. He found damage to the right front bumper, fender assembly, lights, lamps, hood panel and radiator support panel. However, he did not inspect the radiator for damage. He sent his findings to Imperial and was later advised by Rick's that the vehicle needed additional repair to the front bumper cover and some rear bumper damage that was not covered on the original appraisal. The first appraisal of the damage was $2,306.40 and the appraisal for the supplemental work was $346.55. He stated again that he did not inspect the radiator and he was not advised by anyone at Rick's of a problem with the radiator. Nevertheless, he did state that his expert opinion was that there was no damage to the radiator as a result of the accident.
On cross-examination, Mr. Boudreaux admitted that he did not know the car had to be towed to the repair shop until he got the bill for towing. No one at Imperial informed him that the car had to be towed because it was not drivable due to a dry radiator. Further, he did not obtain a copy of the police report of the accident. His visual inspection of the front end of the car was limited to sheet metal damage and he did not see sheet metal driven *384 into a radiator or a condenser. However, Mr. Boudreaux admitted he would have examined the radiator if he had known it was out of fluid and had to be towed after the accident. He also would have inspected the rear bumper of the van if he had the police report and knew that the van had been pushed into the car parked behind it.
Mr. Boudreaux testified that he went to a second body shop in October of 2001 to inspect the car for a third time. This was done at the request of Imperial to find out why the van was still not running. He found that the van was overheating, but could not tell the cause of the problem. At that time he was told the "engine was blown." He explained that a blown engine can be caused by the head gasket or a crankshaft. The cost of repair would depend on the cause.
Mr. Boudreaux also testified that the incident described by Mrs. Dufrene in which the car overheated, made a loud noise and killed when she attempted to accelerate at a red light could have been exhaust leaking past the head gasket and could have been the "engine blowing." In Mr. Boudreaux's opinion, the overheating problem was the responsibility of the repair shop to fix.
Mr. Boudreaux did take issue with the testimony of Mrs. Dufrene that steam came out of the radiator of her parked van at the time of the accident, stating that would only occur if the car were running and the water in the radiator was hot. Mr. Boudreaux testified that if Mrs. Dufrene drove the car while it was overheating, that could have caused the engine to blow. Given all of the information, he could not state for certain whether the accident or subsequent misuse of the van caused the engine damage.
The court also heard testimony from Rick Compel, owner of Rick's. He confirmed that the Dufrenes' van was originally towed to his shop in August of 2001 for repair after the accident. He also confirmed that he did the work described in the original and the supplemental appraisal and was paid for his work by Imperial.
Mr. Compel testified that he did the work according to the appraisal. Since there was no mention of the radiator, he did not look at it. He explained that assessing the damage is the job of the insurance adjuster and he is not authorized to repair anything beyond the appraisal. He only does body work and this appraisal only required such work.
Mr. Boudreaux stated that he did not inspect the radiator when the car was brought to him for repair, and could not recall if either of the Dufrenes had requested that he examine the radiator. However, when the van was returned to him a second time for overheating problems, he did inspect the radiator and found a crack. Mr. Boudreaux replaced the radiator at no charge. Mr. Boudreaux stated that he assumed the damage to the radiator was caused by the accident. About a week later, Mr. Dufrene went to Mr. Boudreaux's shop insisting that Mr. Boudreaux either buy the vehicle or he would hire an attorney.
The record also contains various documentary evidence, including the police report, which shows Mrs. Dufrene's van was properly parked when it was struck in the front end by Ms. Williams' vehicle. The report also clearly shows that the van was pushed into the car parked behind it. The record contains both the original and the supplemental appraisals, and correspondences from the Dufrenes to Rick's and Imperial dated October 11, 2001seeking $3,438.27 for replacement of the engine. However, the estimate referred to in the letters is not contained in the record. *385 Both the plaintiffs and Imperial presented valuation estimates of the van at the time of the accident. Also contained in the record are time sheets from Mrs. Dufrene's employer showing time taken to deal with the repair of her van.
As previously stated, after reviewing all of the evidence, both testamentary and documentary, the trial judge found that the Dufrenes did not meet their burden of proof that the ruin of their car was related to the accident, and dismissed the matter. Specifically, the court stated in reasons for judgment:
The testimony in this case indicates that the vehicle in question sustained body damage as a result of the accident of August 23, 2001. The vehicle was taken to Rick's Custom, Inc. for repair of the body damage.
Imperial made a tender to plaintiffs for the cost of this repair as well as the rental expense incurred during the period of repair.
Mr. Clark Dufrene testified that he knew that the repairs performed by Rick's Custom, Inc. were limited to body damage.
Plaintiffs are now asking this court to find liability as to the insurer of the defendant's vehicle for damages not directly related to the accident of August 23, 2001. There is no evidence that the damage to the engine was caused by the accident. This court does not find that the damage caused by the overheating of the engine is a result of the accident and therefore does not find in favor of defendants and against plaintiffs. (sic)
Furthermore, plaintiffs understood the limited scope of services provided by defendant, Rick's Custom, Inc. Therefore, without reaching a decision as to the cause of the leak in the radiator, this court is unwilling to find in favor of plaintiffs and against Rick's Custom, Inc.
In three assignments briefed to this court, the Dufrenes argue the trial court misapplied the law in its ruling. Defendants argue that the trial court made findings of fact which are not reversible absent a showing that the findings are manifestly erroneous or clearly wrong.
We do not quarrel with the general law contained in defendants' brief. Our standard of review is that a district court's finding of fact may not be set aside in the absence of manifest error or unless it is clearly wrong. Leal v. Dubois, XXXX-XXXX (La.10/13/00), 769 So.2d 1182, rehearing denied XXXX-XXXX (La.11/17/00), 774 So.2d 155. The trial court's determinations as to whether the plaintiffs' testimony is credible and whether they have discharged their burden of proof are factual determinations not to be disturbed on review unless clearly wrong or manifestly erroneous. Derrick v. Yamaha Power Sports of New Orleans, 03-184 (La.App. 5 Cir. 6/19/03), 850 So.2d 829, 834, citing; Bruno v. Harbert International, Inc., et al., 593 So.2d 357 (La.1992). There is a two-part test for the reversal of a factfinder's determinations: (1) the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the court, and (2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). Stobart v. State, 617 So.2d 880, 882 (La.1993).
As we understand the judgment and the reasons for judgment, the trial court found that the plaintiffs failed to meet their burden of proof that the leak in the radiator, and ensuing engine problem, was causally related to the accident.
*386 As explained by the Louisiana Supreme Court in Lasha v. Olin Corp. 625 So.2d 1002, 1005 (La.1993):
In Louisiana tort cases and other ordinary civil actions, the plaintiff, in general, has the burden of proving every essential element of his case, including the cause-in-fact of damage, by a preponderance of the evidence, not by some artificially created greater standard. Proof by direct or circumstantial evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not. (citations omitted)
Id.
In applying the above cited law to the facts of the matter before us, we find the trial court was manifestly erroneous in its factual finding that the damage to the Dufrenes' van was not causally related to the accident. There is ample evidence to show that the van was in good running order before the accident and that it had serious overheating problems afterward. Both plaintiffs offered testimony and documentary evidence to support that fact. Defendants, on the other hand, did not show otherwise. Imperial's adjuster admits he never examined the radiator. Mr. Combel also states he only did the body work and never looked at the radiator until the van was returned to him a second time after his repair. Mr. Combel did not refute Mr. Dufrene's testimony that the radiator was discussed as a possible problem at the time the car was originally towed to Rick's for repair; Mr. Combel simply stated that he could not recall if it was discussed.
What plaintiffs showed at trial was that their van was seriously damaged in a front end collision, rendering it unusable and necessitating the towing of the vehicle to Rick's for repair. After the van was returned from Rick's it began to have overheating problems. The van was returned to Rick's twice before a leak in the radiator was discovered. By the time the problem was detected, the van was no longer usable because the engine had "blown".
An adjuster for Imperial, the insurance company liable for the damages, went to the repair shop shortly after the accident without the police report or any information from plaintiffs, and assessed only body damage to the front end. He made only a visual check of the radiator and did not see any sheet metal imbedded in the radiator. Based on the adjuster's report, Rick's only repaired the damage to the body of plaintiffs' van, and Imperial paid only for that body work. A supplemental finding of damage to the rear end of the vehicle had to be produced after the adjuster was informed that the van struck a car parked behind it at impact. Neither the adjuster nor the repairman checked to see if the cooling system of the van was in need of repair, beyond a cursory visual inspection. It was only after the plaintiffs returned the van to Rick's for the second time that the possibility of cooling system damage was considered.
We do not believe it would require the testimony of an expert in automobile mechanics to meet the burden of proof by a preponderance of the evidence that a radiator may be damaged in a front end collision, and that discovery of this damage may require more than a simple visual inspection to see if any obvious pieces of metal punctured it. Thus, we do not find merit in defendants' argument that the "self-serving" testimony of plaintiffs is insufficient to meet the required burden of proof, and that the damage was more likely caused by the age of the car and its misuse by the owner.
*387 We find the plaintiffs in this action have proven by a preponderance of evidence that the damaged radiator and ultimate engine damage to their van was directly related to the accident in question. Accordingly, we find the trial court was manifestly erroneous and clearly wrong in its finding of fact that no causal relationship existed between the damage sued for herein and the accident. Therefore, we reverse the trial court's ruling in this matter and hold that plaintiffs have proven their cause of action against defendants.
Having ruled in favor of plaintiffs, we turn our attention to amount of damages proven. The pertinent clause in the collision portion of the applicable insurance policy states:
The maximum limit of collision insurance for losses in the actual cost to repair or replace the damaged property, or the limit stated on the declarations page, whichever is lesser. Payment won't exceed the actual cash value of the property at the time of the loss........
We believe the record is sufficient to show that repair of the vehicle would amount to more than the value of the vehicle at the time of the accident. Accordingly, we award to plaintiffs the value of the van at the time of the accident, shown to be $3,025.00.
Plaintiffs also claim damage pursuant to La. R.S. 22:658, which provides in pertinent part as follows:
A. (1) All insurers issuing any type of contract, other than those specified in R.S. 22:656, R.S. 22:657, and Chapter 10 of Title 23 of the Louisiana Revised Statutes of 1950, shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest....

. . . . . .
(4) All insurers shall make a written offer to settle any property damage claim within thirty days after receipt of satisfactory proofs of loss of that claim.

. . . . . .
B. (1) Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor, as provided in R.S. 22:658(A)(1), or within thirty days after written agreement or settlement as provided in R.S. 22:658(A)(2) when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of ten percent damages on the amount found to be due from the insurer to the insured, or one thousand dollars, whichever is greater, payable to the insured, or to any of said employees, together with all reasonable attorney fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, ten percent of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney fees for the prosecution and collection of such amount.
Given the evidence presented at trial we find Imperial was arbitrary and capricious in its failure to timely pay insurance benefits and is, therefore, subject to penalties pursuant to La. R.S. 22:658B(1), and so order. We further find that an award of reasonable attorney fees an amount equal to one-third of the award to plaintiffs is appropriate and we so order.
We note that the cross-claim made by Imperial against Rick's is still viable with the rendering of this opinion, and remand *388 the matter to the trial court for consideration of that issue.
In conclusion, we reverse the judgment of the trial court and enter judgment in favor of plaintiffs and against Imperial for damages as awarded herein. We remand the matter to the trial court for further proceedings in accordance with this opinion.
REVERSED, RENDERED, AND REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION.
NOTES
[1] That date was later corrected to September 6, 2002.