997 So.2d 16 (2008)
STATE of Louisiana and the Louisiana Cemetery Board, Plaintiff-Appellees
v.
TWIN CITIES MEMORIAL GARDENS, INC., Defendant-Appellant.
No. 43,568-CA.
Court of Appeal of Louisiana, Second Circuit.
September 17, 2008.
Rehearing Denied October 16, 2008.
*18 Paul A. Lemke, III, for Appellant.
James D. Caldwell, Attorney General, Ryan M. Seidemann, Lindsey K. Hunter, Assistant Attorneys General, for Appellees.
Before CARAWAY, DREW and MOORE, JJ.
MOORE, J.
Twin Cities Memorial Gardens Inc., which operates a private cemetery in the Cheniere area of Hwy. 80 in West Monroe, appeals judgments that rejected its exceptions of no right and no cause of action, placed the corporation in receivership, and ordered the corporation and its president, Dannie Jackson, to hand over all corporate records to a court-appointed administrator. For the reasons expressed, we reverse and remand.

Procedural History
This matter was tried entirely on the pleadings. The State of Louisiana and the Louisiana Cemetery Board (collectively, "LCB"), acting through the attorney general, filed a petition for injunctive relief and receivership on January 28, 2008, against Twin Cities and Jackson. It alleged that LCB was charged with enforcement of provisions for the maintenance of cemetery property and that the attorney general was the primary trustee for bringing litigation on LCB's behalf pursuant to La. R.S. 8:69. The attorney general also claimed the status of parens patriae for all citizens who will be affected by Twin Cities' failure to comply with LCB regulations.
The petition alleged various facts. After receiving consumer complaints that Twin Cities failed to deliver paid-for grave markers and to keep up the property, LCB held an administrative hearing in 2005, finding several violations and threatening to revoke its cemetery license. Since then, LCB had received 24 more consumer complaints and solicited 699 signatures of people claiming vested interests, demanding the revocation of Twin Cities' license and expulsion of its management. In 2006, Twin Cities failed to reinstate its cemetery license, and operated without a license in 2006 and 2007. The petition listed four specific deficiencies:
(1) Five out of six "randomly probed" burials were not deep enough (posing a risk of uneven settlement and a hazard to visitors);
(2) 42 items of merchandise were not delivered timely;
(3) Perpetual care trust fund forms were never filed for 2005 and 2006; and
(4) Merchandise trust fund forms were never filed for the same two years.
Citing the interest of interment right owners of Twin Cities and "all persons who have relatives and/or friends" buried there, LCB demanded appointment of a receiver to run Twin Cities. Alleging that any injury, loss, or damage suffered by the public is irreparable, both physical and psychological, it demanded an injunction for Twin Cities' failure to adhere to Title 8, specifically an order enjoining Twin Cities or any of its officers from destroying its business records. Finally, it demanded the appointment of a receiver with full power to hold, administer, manage and discharge the affairs of Twin Cities for so long a period of time as the court may deem necessary. Notably, the petition included no request for a hearing on the pleadings only.
Attached to the petition was a certified copy of the administrative hearing before LCB and a copy of the petition signed by 699 people. Also attached were 10 affidavits, including that of Lucille McCann, director *19 of LCB, who verified the factual allegations, and of eight Twin Cities customers who paid for markers that were never delivered, or for grave plots that could not be located, or who decried the generally seedy state of the graveyard. The final affidavit was that of Ryan Seidemann, the assistant attorney general who drafted the petition. He requested issuance of a TRO without notice to Twin Cities or Jackson, to prevent the destruction of Twin Cities' documents.
The district court signed a TRO directing Jackson to relinquish control of Twin Cities, placing the corporation in receivership, appointing Timothy Mulhearn Sr. (the Chief Executive Officers of Mulhearn Funeral Homes) as receiver, and freezing Twin Cities' assets.
Mr. Seidemann also swore out a search warrant for two locations, presumably Twin Cities' office and Jackson's home. The district court signed the search warrant on January 29; according to statements in brief, it was executed.
Twin Cities filed exceptions of no right and no cause of action. It first urged that the only persons who may seek receivership of a corporation are "any shareholder or creditor" under La. R.S. 12:151 A(1)-(6); LCB does not qualify. It conceded that under La. R.S. 8:75, LCB has the authority to seek injunctive relief, but this requires a very specific showing of public interest, Restlawn Park Cemetery Inc. v. Louisiana Cemetery Bd., 611 So.2d 835 (La.App. 4 Cir.1992), writ denied, 618 So.2d 404 (La.1993). Next, it urged that LCB's petition, with the search warrant, amounted to an illegal taking of private property in violation of La. Const. Art. 1, § 4. Admittedly, the "governing authority of any municipal corporation or parish" may expropriate a private cemetery on a finding that it has been abandoned or is without management. La. R.S. 8:112. However, there is no authority for LCB to expropriate a private cemetery, and the plaintiffs did not make the requisite showing under § 112. Twin Cities concluded that the total lack of statutory authority also negated the cause of action.
LCB filed a memo opposing the exceptions. It provided a long disquisition on parens patriae, culminating with the "modern doctrine" stated in Alfred L. Snapp & Son Inc. v. Puerto Rico, 458 U.S. 592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982). It conceded that the concept was mostly a creature of federal jurisprudence, but La. Const. Art. 4, § 8 gives the attorney general authority to "institute, prosecute, or intervene in any civil action or proceeding," which one court has recognized as congruent with Snapp. State ex rel. Ieyoub v. Bordens Inc., 95-2655 (La.App. 4 Cir. 11/27/96), 684 So.2d 1024, writ denied, 97-0339 (La.3/14/97), 690 So.2d 42. LCB contended, however, that the attorney general's parens patriae status overrides the narrow categories of R.S. 12:151 A, and that LCB qualifies in the broad sense of a creditor as "one to whom any obligation is owed, whether contractual or otherwise." Black's Law Dict., 8 ed. (2004). By virtue of its statutory authority to "enjoin any person from operating or conducting a cemetery business" and obtain "such additional orders as may be necessary to protect the health, welfare, or safety of the public," La. R.S. 8:75 A, D, LCB may seek to place a cemetery corporation such as Twin Cities in receivership. Finally, the constitution does not prohibit reasonable exercise of police power, as LCB sought only to remove a threat to public safety.

Action of the District Court
The hearing on the preliminary injunction was February 5. Twin Cities' counsel asked the court to rule on his exceptions and announced that his client, Dannie Jackson, was not present. The court stated *20 that because the Corporation Code does not define creditor, the court was prepared to accept the Black's Law Dictionary definition. The assistant attorney general argued that the civil law concept of obligation was much broader than under common law; hence, the state was a creditor entitled to seek receivership. The court overruled Twin Cities' objections.
On the merits, the assistant attorney general announced that its entire case consisted of materials that were submitted with the original petition: "We don't intent to call any new witnesses." Twin Cities objected that this was all hearsay. Without specifically ruling on the objection, the court granted judgment as prayed for, based on "the four corners of the pleadings." Finally, the court ordered Jackson to produce any remaining documents that were described in the TRO.
The court signed separate orders issuing a preliminary injunction on the same terms as the TRO and denying Twin Cities' peremptory exceptions. Twin Cities has appealed, raising four assignments of error.

Discussion: Proof at the Hearing
By its second assignment of error, Twin Cities urges the court erred in reviewing and considering affidavits as the only evidence on the hearing for preliminary injunction without compliance with La. C.C.P. art. 3609:
The court may hear an application for a preliminary injunction or for the dissolution or modification of a temporary restraining order or a preliminary injunction upon the verified pleadings or supporting affidavits, or may take proof as in ordinary cases. If the application is to be heard upon affidavits, the court shall so order in writing, and a copy of the order shall be served upon the defendant at the time the notice of hearing is served.
Twin Cities contends that shall is mandatory, but the attorney general provided no prior notice or agreement with counsel to restrict the evidence to affidavits. Further, the affidavits were hearsay and no special statute authorized their use.
The attorney general responds that Twin Cities waived any objection to the use of affidavits only by not objecting timely. It cites the contemporaneous objection rule and argues that the plaintiff was prepared to call live witnesses at the hearing but declined to do so because Jackson declined to attend. The attorney general concludes that Twin Cities should not be "rewarded" for the negligence of its principal.
The wording of Art. 3609 is clear that in the absence of a written order by the court that the matter will be heard on verified pleadings or supporting affidavits  an order which must be served on all parties  the proof must be as in ordinary cases. Licfro Inc. v. State, XXXX-XXXX (La. App. 4 Cir. 10/1/03), 859 So.2d 739; Kilbourne v. Hunt, 276 So.2d 742 (La.App. 1 Cir.1973). Rarely should a preliminary injunction be granted solely on the pleadings. Robinson v. Robinson, 94-2513 (La. App. 4 Cir. 9/15/95), 661 So.2d 1087. The remedy for a preliminary injunction issued in violation of this article is reversal and remand for a hearing that complies with the law. Licfro Inc. v. State, supra; Kilbourne v. Hunt, supra.
We are constrained to agree with Twin Cities that without an order of the court in accord with Art. 3609, the court was not authorized to hear the motion for preliminary injunction on the pleadings and affidavits only. As in Licfro and Kilbourne, supra, the instant orders must be reversed and the case remanded for a hearing that complies with the law.
*21 We acknowledge the attorney general's argument that Twin Cities did not object, specifically, to holding a hearing in violation of Art. 3609; the objection urged only that the documents were hearsay. However, the problem of hearsay, i.e., its notorious lack of reliability, plainly informs the notice requirement of Art. 3609. Rarely should a preliminary injunction be granted solely on the pleadings. Robinson v. Robinson, supra. Proper notice that the plaintiff intended to present only documentary evidence was simply not provided in this case. Moreover, we note that neither Licfro nor Kilbourne, supra, dismissed the defendant's appeal for lack of a contemporaneous objection.
The attorney general's alternative argument  that its witnesses were on hand and available for Twin Cities to call on cross-examination  is unavailing and bordering on disingenuous. As the plaintiff in a civil action, the attorney general had the burden of proving its case by a preponderance of the evidence. The plaintiff can hardly achieve this by failing to call its own witnesses, under any strategy or pretext. The judgment will be reversed and the case remanded.

Twin Cities' Other Assignments
Even though the matter must be reversed, the issues raised by Twin Cities' exceptions are likely to recur upon remand so we have addressed them. By its third and fourth assignments of error, Twin Cities contests the denial of its exceptions of no right and no cause of action. It reiterates that La. R.S. 12:151 A(1)-(6) specifies the persons who may seek the right of receivership of a corporation: "any shareholder or creditor" who meets certain criteria. Neither the attorney general nor LCB is a proper party, and the common law doctrine of parens patriae cannot supersede special statutes. It further argues that the legislature has not created any statute that allows the attorney general or LCB to seize a private corporation and place it in receivership. In support, it cites three bills introduced in the 2008 legislative session, HB 546, SB 339, SB 387. These bills allowed LCB to report to the attorney general if a cemetery "consistently failed to deliver paid-in-full merchandise to consumers," has had its certificate of authority revoked by LCB, or has been found "to be operating in a manner that is harmful to the health, safety, or welfare of the public"; they specifically empowered the attorney general to sue for a TRO and to appoint a receiver, freeze the assets of a cemetery, and essentially operate the cemetery in the owner's stead. Of these, SB 339 was passed as Act No. 541 and signed by the governor, taking effect on June 30, 2008, as La. R.S. 8:69.2. Twin Cities argues that had the attorney general already possessed these extraordinary powers, no special statute would have been necessary.
The attorney general reiterates that its parens patriae status overrides the narrow provisions of R.S. 12:151 A, but it also satisfies the statute under the broad definition of creditor listed in Black's Law Dictionary. It further responds that its actions were a reasonable exercise of police power under La. Const. Art. 1, § 4. Finally, it contends that HB 339 (now R.S. 8:69.2) is totally irrelevant to the appeal, as it is not retroactive, but can be deemed an example of legislation that enacts existing jurisprudence, much the way 2003 Acts No. 1166 and 2006 Acts No. 312 responded to Corbello v. Iowa Production, XXXX-XXXX (La.2/25/03), 850 So.2d 686.
As a general principle, LCB may apply to a district court of the parish in which the cemetery is located for "such additional orders as may be necessary to protect the health, welfare, or safety of the public." La. R.S. 8:75 D. Moreover, the *22 attorney general is empowered to represent LCB in all matters pertaining to the administration or enforcement of Title 8. La. R.S. 8:69. By contrast, La. R.S. 12:151 is obviously a special statute, granting to a narrow class of persons  shareholders and creditors  the right to sue to place a corporation in receivership. The statute that is more specifically directed to the matter at hand must prevail as an exception to a more general statute. Pumphrey v. City of New Orleans, XXXX-XXXX (La.4/4/06), 925 So.2d 1202; Smith v. Cajun Insulation Inc., 392 So.2d 398 (La. 1980). A plaintiff who is neither a shareholder nor a creditor cannot sue for appointment of a receiver of a corporation, regardless of the cause of action a shareholder or creditor may have. Mercer v. Busch-Everett Co., 139 La. 864, 72 So. 422 (1916); Western Electric Co. v. National Automatic Electrical Supp. Co., 135 La. 559, 65 So. 741 (1914).
The decree of receivership cannot be upheld as the plaintiffs do not meet the status requirements of La. R.S. 12:151. Mercer v. Busch-Everett Co., supra; Western Electric v. National Automatic, supra. Further, under prevailing civil law principles we do not find that the common law concept of parens patriae supersedes the very specific provisions of R.S. 12:151. Notably, in the major document of Louisiana's parens patriae jurisprudence, State ex rel. Ieyoub v. Bordens Inc., supra, the attorney general was permitted to file an antitrust action under a specific grant of authority, La. R.S. 51:138; see also State ex rel. Ieyoub v. Classic Soft Trim Inc., 95-804 (La.App. 5 Cir. 10/20/95), 663 So.2d 835, writ denied, 95-2604 (La.1/26/96), 666 So.2d 669. In other words, the exercise of power was not as boundless as the attorney general now argues. Previously, at least one court had cautioned that the state's parens patriae claim "cannot be a disguised attempt to recover damages on behalf of the state's individual citizens-claimants." State v. Time Inc., 249 So.2d 328 (La.App. 1 Cir.), writ denied, 259 La. 761, 252 So.2d 456 (1971). Every objective of the instant action  to enforce trust fund contributions and to receive paid-for grave markers and plots  is perfectly suited to private actions by LCB or by persons with claims for breach of contract. To allow the instant decree of receivership to proceed would judicially repeal R.S. 12:151. The district court erred in not sustaining the exception of no right of action as to the receivership claim.
For the same reasons, the court erred in overruling the exception of no cause of action which contested the attorney general's parens patriae theory of action. However, the enactment of R.S. 8:69.2 now specifically empowers the attorney general to pursue precisely the kind of action asserted and relief sought herein. On remand, the attorney general may allege, and the court must consider, any incidents that occurred, or any ongoing conditions that continued, after the effective date of the law, June 30, 2008. We further note that the statute's provision for a TRO, R.S. 8:69 B(2), is silent as to proof at the hearing; if the attorney general wishes to proceed with only affidavits and pleadings, it would be prudent to comply with C.C.P. art. 3609.
Twin Cities' first assignment of error, contesting the sufficiency of the showing for a TRO and appointment of a receiver, is pretermitted in light of our rulings on the exceptions.

Conclusion
For the reasons expressed, the judgments issuing a preliminary injunction, ordering the appointment of a receiver for Twin Cities, and denying Twin Cities' peremptory exceptions, are reversed. The case is remanded to the district court for *23 further proceedings. No costs, either in the district court or this court, are assessed. La. R.S. 13:4521.
REVERSED AND REMANDED.

APPLICATION FOR REHEARING
Before CARAWAY, PEATROSS, DREW, MOORE and LOLLEY, JJ.
Rehearing denied.