999 So.2d 146 (2008)
Boris Trent BARTLEY and Zachary Bartley, Plaintiffs-Appellants,
v.
Clint FONDREN and Craig Fondren d/b/a C & C Automotive, Defendants-Appellees.
No. 43,779-CA.
Court of Appeal of Louisiana, Second Circuit.
December 3, 2008.
*147 Blanchard, Walker, O'Quinn & Roberts by Jerry Edwards, Shreveport, for Appellants.
Walter Douglas White, Shreveport, for Appellees.
Before STEWART, GASKINS and MOORE, JJ.
MOORE, J.
Trent Bartley and his son Zachary appeal an involuntary dismissal, granted after the presentation of their case-in-chief, of their claim for damages arising from allegedly defective repairs to their 1996 Camaro. Finding no manifest error, we affirm.

Procedural Background
The Bartleys sued Clint & Craig Automotive (also called C & C Automotive, listed on some invoices as CC Hotrods and referred to herein as "C & C"), alleging that they had brought their 1996 Camaro to C & C to replace the car's V6 engine with an LT-1 5.7-liter V8 engine, paid $7,500 for the work, and left the car there over six weeks, but it never performed as expected. They demanded a return of the contract price, incidental repair costs and damages for lost use of the car. C & C responded that the Bartleys had declined many of its suggestions for modification because of price constraints, the Camaro's original transmission was bad, and the car still needed an alternator and water pump. C & C also alleged that on the Bartleys' many return trips to C & C, the Camaro had never demonstrated any of the problems described in the petition.
The matter was tried in January 2008. Because the city court granted an involuntary dismissal at the close of the plaintiffs' case, we will recount trial testimony in some detail.

Trial Testimony
Zachary testified that his dad bought the Camaro for $2,300 in August 2003; it was to be Zachary's ride back and forth to high school. Both said it was running "great," "in good working order" on its original V6 engine with about 170,000 miles. Nevertheless, in July 2006, Zachary, who had by then started college at Louisiana Tech, decided that installing a V8 engine would "help the car last even longer." He denied that he was just trying to soup it up to a race car.
Zachary took the car to Clint Fondren at C & C in Bossier City. According to Zachary, Clint proposed to install a rebuilt LT-1 engine, which would be compatible with the existing transmission and other systems; the job would take one week; and it would cost $5,000. Zachary left the car with C & C on July 21 and made an initial payment of $2,000. After a week, the car was not ready but Zachary made another payment of $2,000. Still another week later the car was not ready; Zachary testified that it was "excuse after excuse," and they kept asking for more money. At some point, they told him the car would need a new transmission after all, and Zachary agreed to this. On August 2 he paid an additional $3,000. Finally they told him they were waiting on a computer for the engine. Zachary eventually picked up the car from C & C sometime in August, knowing that it did not yet have the new computer.
Zachary described the new engine as running "real rough" yet it got him from his home in North Bossier to La. Tech and back. Then it stalled on him in Heart o' *148 Bossier Shopping Center in September 2006. He took it back to C & C on September 8 and paid them another $500. According to the invoice, this was to "rebuild transmission," but Zachary testified that the car would barely start, rode very rough, and the fifth gear was "out." Zachary has since bought a 1993 Honda Accord for his college commute, now to Northwestern State in Natchitoches. He insisted that he approved every recommendation made by C & C, paid $7,500, went without the car for a long period of time, and still it was not in good running order.
On cross-examination, Zachary admitted that sometime after getting the car back from C & C, he took it to another mechanic who said that C & C's work was "incorrect," but this mechanic was not going to testify. Also, his dad took the car to Benton Road Auto Repair, but Zachary was not sure what the mechanics there told him.
Trent testified that he was not involved with the Camaro until it had been in the shop for a month. He denied any special knowledge about cars, but they are a "hobby" of his, and he did not understand why C & C was installing an LT-1. He felt that Zachary had agreed to and paid for every item recommended by C & C, but after $7,500 work, "it was not a stable vehicle on the highway, wouldn't track down the highway correctly," and now the engine will crank but run only about 3-4 seconds. Even though nobody was using the car regularly, Trent admitted that in November 2006 he bought two new front tires and had them installed and aligned at Pep Boys. Trent also admitted that in late November, he took the car to Red River Chevrolet for diagnostics, but C & C objected[1] to letting him say what anybody there told him.
The Bartleys' only other exhibit was a set of photos of the worn-out tires they replaced. While testifying, they referred to several of C & C's exhibits, including copies of the invoices and receipts generated by C & C for Zachary, and copies of the Bartleys' receipts from The Tire Rack, Pep Boys and Red River Chevrolet. It is not clear whether these were actually introduced into evidence, but C & C did not object to their use.
After Zachary and Trent testified, the plaintiffs rested. C & C then moved for involuntary dismissal, arguing that there was no expert opinion as to any defective work performed by C & C, only the Bartleys' lay opinion. The Bartleys argued that they proved the car was not repaired as requested.
The court agreed that after paying a lot of money and waiting a long time, Zachary got back a car that "did not run to his satisfaction." However, the plaintiffs failed to produce the mechanic who told them that C & C's work was defective, thus creating a presumption that the expert's testimony would be adverse to them. The court granted the involuntary dismissal.
The Bartleys appealed, raising one assignment of error.

The Parties' Positions
The Bartleys urge the city court erred in finding that because they failed to call an expert, they did not meet their burden of proving that C & C's work was defective. They assert that they needed to prove their claim only by a preponderance of the evidence, not any higher standard. They show that in Clayton v. Bear's Towing & Recovery Inc., 38,834 (La.App. 2 *149 Cir. 8/18/04), 880 So.2d 943, and Dufrene v. Imperial Fire & Cas. Ins. Co., 03-1001 (La.App. 5 Cir. 2/10/04), 866 So.2d 380, writ denied, XXXX-XXXX (La.5/21/04), 874 So.2d 176, the plaintiffs proved defective auto repairs without the use of an expert mechanic, just by lay descriptions of the unresolved problems with the cars. They argue that the totality of the facts, together with their own testimony, sufficed to show that C & C's work was defective. They also contend it was improper for the court to grant the dismissal before they were allowed to cross-examine C & C's mechanics. They pray for reversal of the involuntary dismissal and judgment in their favor.
C & C concedes that the Bartleys were not satisfied with the car's performance, but disputes that they agreed to all recommendations and set no price limits on C & C's work. Further, although his dad envisioned transportation to and from school, Zachary was angling for a "custom job" and a "race car" that he found he could not afford. C & C asserts that the real issue is that the Bartleys consulted at least one mechanic (and perhaps two) but failed to call him to verify that any of C & C's work was defective. C & C submits that this was a proper application of the "uncalled witness rule," activating the presumption that the testimony of the uncalled witness would have been unfavorable to the plaintiffs. Easter v. Direct Ins. Co., 42,178 (La.App. 2 Cir. 5/9/07), 957 So.2d 323. It concludes that proof of defective workmanship "goes beyond the lay opinion of a customer that the work did not meet their expectations." It asks for affirmance.

Discussion
The motion for involuntary dismissal is defined by La. C.C.P. art. 1672 B:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
A motion for involuntary dismissal requires the trial court to evaluate all the evidence presented by the plaintiff and render a decision based upon a preponderance of the evidence. Gray v. City of Monroe, 41,087 (La.App. 2 Cir. 5/17/06), 930 So.2d 1148, and citations therein. Proof by a preponderance of the evidence means that the evidence, taken as a whole, shows that the fact or cause sought to be proved is more probable than not. Crowell v. City of Alexandria, 558 So.2d 216 (La.1990); Silva v. Calk, 30,085 (La.App. 2 Cir. 12/10/97), 708 So.2d 418. A plaintiff is entitled to no special inferences in his favor, but "uncontroverted testimony should be taken as true to establish a fact for which it is offered absent circumstances in the record casting suspicion on the reliability of the testimony and a sound reason for its rejection." Johnson v. Insurance Co. of N. Amer., 454 So.2d 1113 (La.1984); Fuller v. Wal-Mart Stores Inc., 519 So.2d 366 (La.App. 2 Cir.1988). The appellate court should not reverse an involuntary dismissal in the absence of manifest error, and there is no manifest error if there is a reasonable factual basis for the finding of the trial court. Gray v. City of Monroe, supra.
An adverse presumption exists when a party having control of a favorable witness fails to call him or her to testify, even though the presumption is rebuttable and is tempered by the fact that a party *150 need only put on enough evidence to prove the case. Driscoll v. Stucker, XXXX-XXXX (La.1/19/05), 893 So.2d 32; Easter v. Direct Ins. Co., supra. The adverse presumption is referred to as the "uncalled witness" rule and applies when a party has the power to produce witnesses who would elucidate the transaction or occurrence and fails to call those witnesses. Id.
The Bartleys correctly show that expert testimony is not always needed to prove defective auto repairs. However, if "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact at issue," a qualified expert may testify. La. C.E. art. 702. This court has denied damages for auto repairs in the absence of expert testimony relating the repairs to the defendants' conduct. Erwin v. State Farm, 34,127 (La.App. 2 Cir. 11/1/00), 771 So.2d 229, writ denied, XXXX-XXXX (La.2/2/01), 784 So.2d 6. In this case, the trial court obviously thought that expert testimony would have been helpful, but the Bartleys presented none.
Although on the motion for involuntary dismissal the plaintiffs' testimony should generally be accepted as true, various facts may well have led the trial court to question the Bartleys' credibility. The car was a seven-year-old Camaro with very high mileage, for which the Bartleys paid only $2,300; a reasonable fact finder may well have doubted whether the car was really problem-free before the Bartleys brought it to C & C. Even though Zachary complained that it was riding "real rough," he admitted it made several commutes from Bossier City to Ruston and back. Exhibits used at trial showed that in late 2006 the Bartleys bought tires and made other repairs inconsistent with a nonfunctioning vehicle. In short, this record discloses ample reasons why the trial court may have discredited part of the Bartleys' testimony.
Moreover, the problems described by the Bartleys may well have resulted from other problems in this older, high-mileage car. Against their somewhat ambivalent showing, the Bartleys failed to call the mechanic or mechanics who might have supported the claim of defective repairs. In these circumstances, the adverse presumption of the uncalled witness was sufficient to defeat the plaintiffs' showing.
There is absolutely no merit to the Bartleys' contention that by granting the involuntary dismissal, the trial court denied their right to cross-examine C & C's mechanics. The plaintiff in a civil action bears the burden of proving its case by a preponderance of the evidence. State v. Twin Cities Memorial Gardens Inc., 43,568 (La.App. 2 Cir. 9/17/08), 997 So.2d 16. To meet this burden, the Bartleys were entitled to call C & C's principals or employees in their case-in-chief. "A party or a person identified with a party may be called as a witness and examined by the adverse party[.]" La. C.C.P. art. 1634; La. C.E. art. 611 B. They simply failed to do so.
With the trial court, we are sympathetic to the Bartleys' position. Even if their intention was to soup up a production-line vehicle into a high-performance race car, they paid $7,500 and waited several weeks, and got a result not to their satisfaction. Their lay testimony and circumstantial evidence of faulty workmanship perhaps brought the trial evidence into equipoise, but faltered as a result of the adverse presumption of the uncalled witness. On this record, we cannot declare that the trial court's findings lacked a reasonable factual basis. Gray v. City of Monroe, supra; Sepulvado v. Time It Lube Inc., 39,353 (La.App. 2 Cir. 3/2/05), 895 So.2d 729.

*151 Conclusion

For the reasons expressed, the judgment of involuntary dismissal is affirmed. The plaintiffs, Trent and Zachary Bartley, are to pay all appellate costs.
AFFIRMED.
NOTES
[1] The transcript actually identifies the objecting attorney as Jerry Edwards, plaintiffs' counsel, but this appears to be a court reporter's error.