LOLLEY, J.
h Sammy Mark Hunter appeals a judgment by the Office of Worker’s Compensation for the State of Louisiana (“OWC”), which dismissed Hunter’s claims for additional wage benefits, penalties, and attorney’s fees from his previous employer, James Machine Works, L.L.C. (“JMW”). The judgment was entered in response to JMW’s motion for the involuntary dismissal of Hunter’s claims at the close of his case. For the following reasons, we affirm the OWC’s judgment.
Facts
On June 15, 2007, Hunter, an employee at JMW, injured his left foot in a work-related accident. Shortly after the accident, JMW began paying worker’s compensation benefits to Hunter. After three weeks of benefits had been paid, JMW increased the benefits and began paying Hunter $377.44 per week, which it continues to do. Hunter claims that he informed JMW that it was miscalculating his benefits, because the information used to calculate his average weekly wages for the four week period of time immediately preceding the accident was incomplete and erroneous.
Hunter states that JMW refused to recalculate his benefits, so on August 16, 2008, he filed his Disputed Claim for Compensation with the OWC. In his claim, Hunter sought additional benefits, along with penalties and attorney’s fees.[1] As to his wage benefits, there are two specific issues that Hunter advanced. Namely, he claimed that JMW’s wage information was inaccurate because it did not include: (1) the first 40 hours that Hunter claimed he worked for JMW between May 28 and June 3, 2007 (the third |2week of the four-week period immediately preceding the week of his injury); and (2) wages or income that Hunter earned through other employment as a result of his landscap-ingdawn service business.
The matter was set for trial on November 12, 2009. Some of the facts stipulated by the parties at the outset were:
*1105 1) Hunter was employed by JMW on the date of his accident;
2) Hunter was injured on June 15, 2007, while in the course and scope of his employment;
3) Hunter had been temporarily and totally disabled since the date of the accident until the date of the trial, and he was entitled to temporary and total disability benefits as a result; and
4) With the exception of the first three weeks following the accident, JMW had paid Hunter benefits in the amount of $377.44 per week.
At the conclusion of Hunter’s case, JMW moved for an involuntary dismissal on the grounds that Hunter had failed to prove he was entitled to relief. The OWC sustained. JMW’s motion and dismissed Hunter’s claims with prejudice, stating that Hunter had failed to carry his burden of proof. This appeal by Hunter ensued.
Discussion
Hunter brings one assignment of error on appeal, arguing that the OWC erred when it granted JMW’s motion for involuntary dismissal. He maintains that there are 19 issues presented for review, only several of which he actually briefed. Initially, Hunter argues that the OWC’s findings | sare not entitled to deference and review under the manifest error standard, because, here, the OWC’s judgment was predicated upon an erroneous interpretation and application of law.
Ordinarily, the factual findings of the OWC are subject to manifest error review. Buxton v. Iowa Police Dept., 2009-0520 (La.10/20/09), 23 So.3d 275, 287; Key v. Monroe City School Bd., 45,096 (La.App.2d Cir.03/10/10), 32 So.3d 1144. In this case Hunter argues that the OWC’s determination was legal error and should not be reviewed under the manifest error/clearly wrong standard of review and instead this court should apply a de novo review of this matter. We do not believe the OWC’s conclusion in this case was based on an erroneous legal interpretation and application of law. On this record, we find no basis for a de novo review and instead have applied the manifest error standard.
In the case sub judice, upon the conclusion of Hunter’s case, JMW moved for an involuntary dismissal pursuant to La. C.C.P. art. 1672(B), which states:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
Provided that the plaintiff has completed the presentation of his case, an involuntary dismissal may be granted in a workers’ compensation ease. Taylor v. Tommie’s Gaming, 2004-2254 (La.05/24/05), 902 So.2d 380; Dick v. B & B Cut Stone Co., L.L.C, 40,441 (La.App.2d Cir.12/14/05), 917 So.2d 1191.
A motion for involuntary dismissal requires the trial court to evaluate all the evidence presented by the plaintiff and render a decision based upon a preponderance of the evidence. Gray v. City of Monroe, 41,087 (La.App.2d Cir.05/17/06), 930 So.2d 1148. Proof by a preponderance of the evidence means that the evidence, taken as a whole, shows that the fact or cause sought to be proved is more proba *1106 ble than not. Crowell v. City of Alexandria, 558 So.2d 216 (La.1990); Bartley v. Fondren, 43,779 (La.App.2d Cir.12/03/08), 999 So.2d 146. A plaintiff is entitled to no special inferences in his favor, but “uncon-troverted testimony should be taken as true to establish a fact for which it is offered absent circumstances in the record casting suspicion on the reliability of the testimony and a sound reason for its rejection.” Johnson v. Insurance Co. of North America, 454 So.2d 1113 (La.1984); Bartley v. Fondren, supra. The appellate court should not reverse an involuntary dismissal in the absence of manifest error, and there is no manifest error if there is a reasonable factual basis for the finding of the trial court. Bartley v. Fondren, supra; Gray v. City of Monroe, supra.
Here, there was only one issue before the OWC, and that was the accuracy of the calculation by JMW of Hunter’s average weekly wage, which Hunter argued was incorrectly calculated for two reasons. First, he claimed that JMW had not included all of the wages he had earned for work performed at JMW during the week of May 28 to June 3, 2007. Second, he | ¡¡claimed that JMW did not include income he earned from “moonlighting” with his lawn and landscaping business during the four weeks preceding his workplace accident. After hearing Hunter’s evidence at the trial of the matter, the OWC properly granted JMWs motion for an involuntary dismissal, which finding we believe had a reasonable factual basis.
As to the claim that JMW failed to include all of Hunter’s wages for the week beginning May 28, 2007, Hunter maintains that although JMWs payroll records indicate he only worked 12.5 hours that week (notes in the payroll records indicate that he had been sick that week), he actually worked an entire 40 hour week along with several hours of overtime. On this issue, the OWC noted the following:
[H]e indicates — once again, he uses this word, “probably” worked eighteen hours overtime. I can’t deal with probabilities. I can’t rule on probabilities and I can’t rule on, “I think this is what happened.” The only thing that I can rely on is the proof that is presented to me, documentation. James Machine Works has provided me with that documentation. Their documentation shows for that week, he worked twelve and half hours. It is unfortunate, it appears that he worked full weeks and overtime all but that week, and that week is included in his computation for his average weekly wage. And so, it is unfortunate, but without the documentation, I cannot rule in his favor.
At trial, a representative of JMW, Susan Weaver, testified that its payroll records indicated the following for the week of May 28, 2007, regarding hours worked by Hunter:
Monday, no work due to Memorial Day;
Tuesday, no work, “called in”;
Wednesday, worked 4.5 and “went home sick”;
| fiThursday, no work, “sick”; and,
Friday, worked 8 hours.
Weaver testified that the payroll records were transcribed from Hunter’s original time cards, which according to company policy had been discarded after three months. Thus, according to Weaver, JMWs payroll records indicated that Hunter worked only a total of 12.5 hours for the week of May 28th, which number of hours was used to calculate Hunter’s average weekly wage as dictated by La. R.S. 23:1021(12)(a). The only evidence Hunter had to refute JMW’s documentary evidence was the testimony by him and his wife, Queenie Mae Turner Hunter, that he *1107 indeed worked a full week starting May-28, 2007, in addition to overtime hours.
To support his claim, Hunter and his wife testified that JMW issued two checks to Hunter for that week, representing his regular wages and his overtime wages. Hunter could not produce copies of the checks he claimed that JMW issued to him, with both of them recalling that Hunter gave the checks to Queenie Mae to cash. However, despite the Hunters’ recollections, JMW offered evidence of its check history, which indicated that only one check had been issued to Hunter on June 5, 2007, for the week of May 28th, and that check corresponded with the number of hours of work (12.5) as reflected on JMW’s payroll records for Hunter. Considering the evidence before the OWC — i.e., JMWs documentary payroll evidence and check history versus the Hunters’ imprecise recollections-the OWC was not unreasonable in concluding that the preponderance of the evidence did not weigh in Hunter’s favor on this issue.
[7As to the income attributed to Hunter’s landscaping business, we have no reason to doubt that prior to Hunter’s workplace accident he conducted an active lawn and landscaping business on his off-hours from JMW. Nevertheless, Hunter was unable to provide any proof (other than self-serving testimony to the contrary) of the income generated by that business, specifically for the four-week period prior to his accident. The OWC correctly noted:
He may have worked every day in lawn service between May and June. He may have earned five to six hundred dollars ... a week. He may have. But there is no documentation showing it. And whenever he testified, he always said, “probably, about, maybe,” which means it is speculative, which means he has no basis for saying that. He remembers some of the people he worked for. He thinks he worked for them on some Saturdays, some Sundays. He can’t remember how much he charged them. I can’t pick a figure out of the hat and say this is how much he earned. He has to prove how much he earned. He did not do that.
At the trial, Hunter could only offer vague descriptions of the work he performed, a handful of nebulous clients, vacillating dates of service, and unsure and varying amounts of fees paid by those clients. To make matters worse, Hunter testified that he never reported the income to the Internal Revenue Service or the Louisiana Department of Revenue. Obviously, the evidence offered by Hunter certainly did not rise to the level of proof required to dispute the calculation by JMW of Hunter’s average weekly wage, as Hunter provided barely any proof at all. Again, the OWC was not in error in concluding that Hunter failed to prove his claim by a preponderance of the evidence as to this issue.
|sHere, the only evidence offered by Hunter in support of his claim regarding the calculation of his average weekly wage was testimony by him and his wife. Unfortunately for Hunter, that evidence fell far short of the documentary evidence provided by JMW regarding its payroll for the week in question. Further, as to the lawn business, his only evidence was testimony by him and a relative who had assisted him with the landscaping work. Again, this scant and vague evidence lacked the certainty needed to prove his case. As to both issues, Hunter simply failed to prove by a preponderance of the evidence that JMW had miscalculated his average weekly wage. Therefore, the OWC was not in error in granting JMW’s motion for involuntary dismissal at the close of Hunter’s case.
*1108 Conclusion
Considering the foregoing, the judgment of the OWC granting James Machine Works’ motion- for involuntary dismissal is affirmed. All costs of this appeal are assessed to the claimant, Sammy Mark Hunter.
AFFIRMED.

. Hunter also sought vocational rehabilitation benefits, which the OWC considered "premature” at the trial and did not further address. That issue is not on appeal.