MOORE, J.
1 ¾ Coordinating & Development Corp. (“C & D”), the assignee of an option to purchase real estate, appeals the involuntary dismissal of its claim for specific performance of the option against D.H. Patten Children Co. LLC (“D.H. Patten”), the owner of the property and grantor of the option.[1] For the reasons expressed, we affirm.

Factual Background

D.H. Patten owns a 42-acre tract of land situated between East Texas Street and I-20, just west of the 1-220 loop in Bossier City. Witnesses describe the tract as very picturesque, with a creek, large trees and plenty of space. Prior to 2006, D.H. Patten was leasing it to a photography studio for $2,150 a month.
In late 2006, Renee Hall, a local realtor, developer and entrepreneur, was looking for property in the area. Her daughter had just begun at Bossier Parish Community College (“BPCC”) and Ms. Hall felt that a townhouse development close to campus would be a boon to faculty, staff and students. When she saw this tract, she thought it had great potential. She called Andy Querbes, a local realtor, to find out about it.[2]
After learning that D.H. Patten owned the tract, Querbes called Bert Patten and advised that someone was interested in buying it. The Pattens decided to retain the front four acres but to entertain an offer for the back 38 acres (the “option tract”). Vision Developments of La., Ms. Hall’s LLC, Coffered $875,000; the Pattens countered with $1 million plus the payment of all realtor commissions. Vision agreed to buy an option to purchase at this price. On January 24, 2007, the Pattens and Vision signed a “Standard Form Option Agreement” whereby Vision bought the right to buy the option tract for $1,064,000. The option was good for 180 days and granted Vision the right to “assign all or part of this Agreement to another party”; in consideration, Vision paid the Pattens a nonrefundable $5,000.
Two passages of the option agreement are critical to the case. Exhibit A, ¶7 (“the rezoning clause”) stated:
The property shall be rezoned permitting multi-family residential development and high density townhouse development. Buyers shall make necessary zoning change application at Buyer’s effort and expense; however, Sellers shall sign the application as existing property owner.[3]
The standard form option agreement, ¶ 11 (“the specific performance clause”) stated:
*216 In the event of failure or refusal of either Sellers or Buyer to fulfill his obligations specified herein, after Buyer exercises this Option, the party not in default shall have the right to sue the party in default for specific performance and/or damages, costs and reasonable attorney fees incurred. However, if the Buyer defaults because of the inability to obtain proper zoning or is unable to obtain financing, there is no specific performance required by the Buyer. The $5,000 deposit, in this case, would be forfeited to Seller.
Ms. Hall testified that with option in hand, she intended to develop the option tract for townhouses. She hired a survey- or and architect, and on April 25 she filed a rezoning application with the Bossier City Metropolitan |aPlanning Commission (“MPC”).
In May 2007, the U.S. Air Force announced that it would build a Cyber Command Center on East Texas Street between BPCC and the option tract. News reports forecast a $50 million campus with a research park that would generate 10,-000 jobs. By July, the media announced that Bossier City had bought a 58-acre parcel for $4.3 million, or $74,000 an acre, and would donate the tract to Cyber Command.
Bart Patten admitted that at this price, the option tract would be worth nearly three times the option price. He also admitted getting letters from prospective Haynesville Shale lessees; at the going price of $5,000 per acre, he could have netted $190,000 from lease bonuses alone. Nevertheless, the Pattens testified that the option price of $1 million was “very fair” if the property was dedicated to townhouse development.
Meanwhile, Ms. Hall’s rezoning application stalled. She testified that Mr. Mar-siglia of the MPC brusquely advised her that under a Master Plan adopted in 2003, the area was designated for commercial use only; she requested a refund of her application fee on May 2, 2007. Later, the Pattens called Mr. Marsiglia and he gave them the same report, adding that Ms. Hall had already withdrawn her application.
On May 3, Ms. Hall learned that somebody else wanted to buy her option. Kol-by Nix, a real estate agent in Bossier City, testified that he represented C & D, which was interested in the tract. Nix called Ms. Hall’s attorney, Lance Mosley, who relayed C & D’s offer of $500,000. Ms. Hall testified that she was “shocked,” but agreed to sell the option if she could 14“net $1 million.” C & D agreed, and on May 21, 2007, Ms. Hall signed a “Buy/Sell Agreement for the Purchase of an Option to Buy Land,” conveying Vision’s option to C & D for $1.176 million.[4] The buy/sell agreement contained ¶ 23 (“the additional provisions clause”), inserted by C & D’s counsel, Justin Courtney, with underlining in the original:
Additional provisions supersede conflicting terms in the body of this Agreement. The Zoning obligation contained in Exhibit “A” of the 1 February 2007 option as # 7 shall no longer require the buyer to use the property as a multifamily residential development and high density townhouse development. The Purchaser agrees to hold Seller harmless and indemnify Seller from any lesion issues which may arise.
The Pattens testified that nobody ever consulted them about this revocation of the rezoning clause. In mid-July, C & D notified the Pattens by letter that it had ac *217 quired the option agreement and asked them to set a closing date. A week later, the Pattens emailed Ms. Hall’s lawyer asking for proof that the option tract had been rezoned in accordance with the rezoning clause. On July 27, C & D hand-delivered a letter to the Pattens stating that the closing would be on July 30.
Shortly before the scheduled closing, the Pattens faxed a letter to C & D, advising that their cause for signing the option agreement was to see that the property would not be for commercial use but rather for multi-family residential and high-density townhouse development. Stating that C & D had failed to comply with the rezoning clause, the Pattens refused to attend the closing.

IsProcedural History and Action of District Court

C & D filed this suit in January 2008, seeking specific performance of its option. It named as defendants D.H. Patten and Vision, Ms. Hall’s LLC. The defendants jointly moved for summary judgment urging that C & D had failed to comply with the rezoning clause. They conceded that Ms. Hall had applied for rezoning, but argued that because of the Master Plan that change could not occur. C & D opposed the motion, urging that D.H. Patten’s real motive was seller’s remorse, the realization that complying with the option would cost the Pattens $1.9 million. The court denied the motion for summary judgment and the matter proceeded to trial.
At the start of trial in May 2011, C & D severed its claims against Vision and proceeded to trial against D.H. Patten only. Over two days, Ms. Hall and the Pattens testified to the facts outlined above. The tenor of C & D’s case was that the rezoning clause in the original option agreement was intended to benefit solely the buyer, Vision; if it was breached, the seller (D.H. Patten) simply could not complain. In support, C & D called Andy Querbes, the broker who conveyed the offers between the Pattens and Ms. Hall; Lance Mosley, the attorney and title examiner who assisted Ms. Hall in assigning Vision’s option to C & D; Kolby Nix, the realtor who put together the buy/sell agreement on behalf of C & D; and Jeffrey Wyatt, the realtor who negotiated the assignment on behalf of C & D’s principal, Mr. LeComte. All these witnesses stated that in their professional opinion, the rezoning clause was an unusual provision which they interpreted as conferring a benefit on the buyer, not the seller. They agreed that a seller 1 sretaining adjacent land might wish to control the future use of the conveyed tract, but the normal mechanism for doing this was to file property restrictions prior to sale. These witnesses all felt that because the Pattens did not benefit from the rezoning clause, they were unaffected by its breach.
The Pattens testified on cross-examination that the rezoning clause was of paramount importance to them. They were retaining the front four acres for commercial use, and they did not want “competition” from other commercial entities on the adjoining option tract. Bert Patten conceded that there were other ways for his LLC to control the use of the option tract after sale, but he thought the rezoning clause gave him this right.
At the close of C & D’s case, D.H. Patten moved for involuntary dismissal. The court granted this with oral reasons. In essence, the court found the rezoning clause was mandatory and an obligation on the buyer; since Ms. Hall did not comply with it, there can be no specific performance. The court also stated in obiter dicta that Ms. Hall, the Pattens, Andy Querbes and Lance Mosley were all in good faith.
*218 C & D has appealed, raising two assignments of error. Vision has filed an- ami-cus curiae brief, also seeking reversal.

Applicable Law

The motion for involuntary dismissal is defined by La. C.C.P. art. 1672 B:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then 17determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
A motion for involuntary dismissal requires the trial court to evaluate all the evidence presented by the plaintiff and render a decision based upon a preponderance of the evidence. Taylor v. Tommie’s Gaming, 2004-2254 (La.5/24/05), 902 So.2d 380; Williams v. Allen, 44,301 (La.App. 2 Cir. 7/1/09), 15 So.3d 1282. Proof by a preponderance of the evidence means that the evidence, taken as a whole, shows that the fact or cause sought to be proved is more probable than not. Hebert v. Rapides Parish Police Jury, 2006-2001 (La.4/11/07), 974 So.2d 635; Bartley v. Fondren, 43,779 (La.App. 2 Cir. 12/3/08), 999 So.2d 146. The plaintiff opposing a motion for involuntary dismissal is entitled to no special inferences in his favor. Crowell v. City of Alexandria, 558 So.2d 216 (La.1990); Williams v. Allen, supra. The appellate court should not reverse an involuntary dismissal in the absence of manifest or legal error. Bartley v. Fondren, supra; Cosman v. Cabrera, 2009-0265 (La.App. 1 Cir. 10/23/09), 28 So.3d 1075.
Interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art. 2046; Campbell v. Melton, 2001-2578 (La.5/14/02), 817 So.2d 69. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050.
IsWhen a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law. Prejean v. Guillory, 2010-0740 (La.7/2/10), 38 So.3d 274; Elston v. Montgomery, 46,262 (La.App. 2 Cir. 5/18/11), 70 So.3d 824, writ denied, 2011-1292 (La.9/23/11), 69 So.3d 1165. Nonetheless, factual findings that pertain to the interpretation of a contract will not be disturbed absent manifest error. Campbell v. Melton, supra; Elston v. Montgomery, supra.

Discussion

By its first assignment of error, C & D urges the court erred as a matter of law by failing to give effect to all unambiguous provisions of the option agreement. Citing the general rules of interpretation, La. C.C. arts. 2045-2056, C & D argues that the court applied only the rezoning clause; had it applied the specific performance clause, it would have found that only the buyer is relieved of the obligation of specific performance, not the seller. C & D submits that if the buyer is still willing to buy the property despite being unable to obtain the zoning sought by the seller, “that is a perfectly acceptable allocation of the risk between the parties,” and the buyer should be entitled to specific performance.
By its second assignment, C & D urges that even if parol evidence was admissible *219 to ascertain the intent of the parties, the overwhelming weight of the evidence supported the claim for specific performance, and the court’s decision to the contrary was plainly wrong. C & D contends that the court should have found (1) Andy Querbes was indeed acting as the Pattens’ | ^realtor, so any ambiguity in the option agreement should be construed against D.H. Patten; (2) the Pattens wanted to avoid this option because property values surged with the disclosure of the Cyber Command Center, not because of any qualms about zoning; and (3) the conditions relating to zoning and specific performance inured solely to the benefit of the buyer, so the seller cannot complain about a technical breach.
By amicus curiae brief, Vision urges the option agreement is not clear and explicit because the owner of the tract, D.H. Patten, was not a party to the. agreement; instead, the Pattens signed it, without disclosing their representative capacity; hence, the document is ambiguous. Vision also argues that although the court purported to find the option agreement clear and explicit, the court plainly analyzed a large amount of parol and extrinsic evidence, an exercise that would be totally unwarranted for a truly clear and unambiguous contract; hence, the court must have actually found the option agreement was ambiguous.
We have closely reviewed the rezoning clause and cannot subscribe to Vision’s position that it is, on its face, unclear or ambiguous. The first sentence states, “The property shall be rezoned permitting multi-family residential development and high density townhouse development.” This is a definite, ascertainable condition. The second sentence requires the buyer to “make necessary zoning change application at Buyer’s effort and expense[.]” This places the obligation on the buyer, Vision. These provisions contain no ambiguity or inconsistency; they imply no absurd consequences. They are adequately stated to support, as a matter of law, the |indistrict court’s interpretation of the option agreement.
The district court further found that the condition stated in the rezoning clause never occurred because Ms. Hall “chose to make [the] decision” to withdraw the application. This is a factual finding pertinent to the interpretation of the contract and thus subject to manifest error review. Prejean v. Guillory, supra; Elston v. Montgomery, supra. There was conflicting evidence on this issue: C & D showed that rezoning the option tract to any residential use was virtually impossible owing to Bossier’s Master Plan; three real estate agents and one attorney all testified that in their view, the buyer could withdraw the application without prejudice because the rezoning clause was strictly for the buyer’s benefit. On the other hand, the Pattens testified that the rezoning clause was their effort to control future use of land adjacent to their own. It may have been a somewhat unconventional device for achieving this goal but it is not unreasonable, given their desire to retain the front four acres. Finally, there is the fact that Vision explicitly negated the rezoning clause when it executed the buy/sell agreement on May 21, 2007. On this conflicting evidence, we must defer to the district court’s finding that Ms. Hall and Vision failed to comply with the rezoning clause.
With this finding, we must reject C & D’s first assignment of error, which urges that the court erred in failing to give effect to all the provisions of the contract, particularly the specific performance clause. This clause applies in the event of “failure or refusal of either Sellers or Buyer to fulfill his obligations specified herein, after Buyer exercises this option[.]”
*220 InCritically, it also states that “the party not in default shall have the right to sue the party in default for specific performance!;.]” Because of the finding that the Pattens were not in default, they could not be compelled to perform; because of the finding that Vision was in default due to Ms. Hall’s business decision, C & D as Vision’s assignee cannot sue for specific performance. The district court did not commit legal error in granting the involuntary dismissal. La. C.C.P. art. 1672 B; Bartley v. Fondren, supra.
By its second assignment of error, C & D lists several factual findings which it submits are plainly wrong. Sitting as a finder of fact, this court might not have found the same facts, but on this large, contentious record we will not disturb the court’s findings that pertain to the application of the option agreement. Prejean v. Guillory, supra; Elston v. Montgomery, supra. Vision argues that the court must have considered the option agreement ambiguous, under Art. 2046, because it made so many factual findings. However, the court specifically stated that the option agreement was clear, and we view the various factual findings as part of the court’s effort to establish the narrative, align the parties, and show how they came to their various agreements. We find no error in the court’s interpretation of the option agreement and its finding that D.H. Patten was not in default for the failure of the rezoning clause. These assignments of error lack merit.

Conclusion

For the reasons expressed, the judgment is affirmed. Costs are assessed against Coordinating and Development Corporation.
AFFIRMED.

. The two members of D.H. Patten Children Co. LLC are Bert Patten and his sister Trina P. Philibert, sometimes referred to herein as "the Pattens” or by their individual names.

. Apparently, Querbes’s name was on a nearby "for sale” sign, but not on this tract. Although he equivocated in deposition, Bert Patten testified at trial that the Pattens did not consider Querbes to be their realtor. Ms. Hall consistently stated that she never considered him to be hers.

.The standard form option agreement listed Bart D. Patten and Trina P. Philibert as owners of the option tract, but they later alleged that D.H. Patten, their LLC, was the actual owner.

. Ms. Hall later signed a separate “Assignment of Option Agreement.”