MOORE, J.
hThe Town of Arcadia appeals a judgment of involuntary dismissal that rejected its claims for declaratory judgment, in-junctive relief and damages. The dispute is over the ownership of four large, granite panels that form the “Veterans Memorial Wall” in Arcadia, whether the wall belongs to the Town of Arcadia, the Arcadia Chamber of Commerce, the Bienville Parish Police Jury, or to someone else. We affirm.

Factual Background

According to newspaper articles admitted in evidence, and the testimony of May- or Jesse Eugene Smith Jr., in 1999 the Chamber conceived the idea of building a memorial to veterans from Arcadia and Bienville Parish. The Chamber funded the purchase of the heavy (1½-2 tons each) polished granite panels with contributions from members and by selling memorial plaques to local residents for $25 each. According to minutes of the Arcadia Town Council, on July 13, 1999, the Chamber’s then-president, Larry Joyner, came to the council to talk about a “proposed veterans memorial the Chamber of Commerce wants to have built beside the gazebo to honor the veterans.” The council approved a “motion that the town will support the. Chamber of Commerce on this project.”
The space next to the gazebo was formerly part of the Illinois Central Gulf Railway depot in Arcadia. In 1985, after the railroad stopped running, I.C.G. sold the property to the Town; in early 1986, the Town leased it to the Bienville Depot Museum, to use as a museum and for office space. (The lease was terminated by mutual consent in 2004.) In 1999, the apparent agreement was for the Chamber to place the wall on land owned by the IsTown and leased to the museum. The parties admit, however, that no legal instrument addressed the ownership of the wall.
The Chamber followed through, installing the panels on a concrete slab next to *25 the gazebo and holding a formal dedication on December 5, 1999. Photos admitted in evidence show that the Chamber sold a large number of plaques, covering almost every available space on the panels. May- or Smith, and three Town employees, testified that since the dedication, .the Town has regularly mowed and string-trimmed the grass around it, replaced the flag, washed the panels and paid the electric bill for the light.
In October 2013, Mayor Smith came home from an out-of-state trip and discovered that the wall had been removed from the depot property. He called the Chamber’s current president, Tom Martin, and learned that the‘Chamber had moved it to the new Bienville Parish Courthouse. It transpired that in August 2013, the Chamber had formally asked the Police Jury to relocate the wall; the minutes of the meeting were sent to The Bienville Democrat, the official journal, for publication; at the next meeting, September 11, 2013, the Police Jury unanimously approved the motion, and hired Eagle Vault to move the panels. Mayor Smith was unhappy that nobody had consulted the Town about this, and demanded that the Chamber return the wall within seven days. Of course, the Chamber did not comply.

Procedural History

The Town filed the instant suit on November 6, 2013, against the Chamber and the Police Jury, demanding (1) a declaratory judgment as to the ownership of the wall, (2) injunctive relief for the return of the wall, and |¾(3) damages for wrongful conversion.
The defendants conceded there was no written agreement as to the ownership of the wall, but contended that (1) the Chamber owned it, (2) the Chamber placed it on the depot ■ site with the consent of the Town and of the Depot Museum, and (3) both defendants felt, after the new courthouse was built, it was a better location for the wall.
The Town’s pretrial motions to recuse two of the district court judges "and for summary judgment were denied, rulings not contested on appeal.

Action in the District Court

Trial was held on June 15, 2015. The parties stipulated to a large number of exhibits, including the newspaper articles, photos, and minutes of the Town Council and Police Jury mentioned earlier.
Nine witnesses testified in the Town’s case-in-chief. Mayor Smith testified as outlined above. Although he had been in office only sincé: January 2003, he had researched the Town’s records and could find no documents addressing who owned the wall. ’ He also commented that the Town always did whatever the Chamber asked. Jimmy Dean Smith, the. Bienville Parish Assessor, confirmed that the depot property belonged to. the Town, but he stated no opinion as to.who owned the wall. James W. Martin, the Bienville Parish Clerk of Court, confirmed that he could find no documents on file regarding ownership of the wall. Three Town employees testified that they had always mowed and string-trimmed the site, washed the panels, and had never seen anybody from the Chamber come out and do these jobs, Jason Campbell, of Campbell Monument Company, qualified as |4an expert in stone memorials and monuments. He measured the panels, estimated their weight at 1½-2 tons each and concluded that they were permanently attached to the depot site. Finally, Capt. E.E. Letlow Jr., a retired Navy officer, testified that he was the keynote speaker at the .dedication in 1999. He also considered the wall permanent.
At the close of the Town’s case-in-chief, the defendants moved for involuntary dismissal. After hearing arguments, the dis *26 trict court ruled orally, finding: (1) the Town authorized the Chamber to place the wall on the depot property, (2) no Town funds were ever spent on the wall, and (3) nobody objected when the Police Jury voted to move the wall, even after the matter was published in the newspaper. The court gently upbraided the parties (“I’m appalled- that this lawsuit was- ever even filed”) and remarked that the dispute might have been averted had the defendants not acted while the mayor was out of town. The court further opined that neither the Chamber nor the Police Jury really owned the wall, but rather the people who bought plaques, and that at any rate the Town failed to prove its case by .a preponderance. The court therefore granted involuntary dismissal and rendered judgment dismissing the -Town’s claims.
The Town has appealed, raising two assignments of error.

The Parties’ Positions

' By its first assignment, the Town urges the court committed manifest error in finding that the Town- did not make out a prima facie case of ownership by attachment or accession. It contends the wall panels are an “other construction,” C.C. art. 463, citing the unrebutted testimony of Jason iflCampbell, and therefore belong to the owner of the land, La. C.C. arts. 464, 490. In fact, they are-presumed to belong to the owner of the land unless separate ownership is evidenced by an instrument filed for registry in the conveyance records, La. C.C. art. 491; since the defendants presented no evidence, they could not' have rebutted the presumption. The Town also argues the court was plainly wrong to interpret the council minutes of July 13, 1999, as “consent” to place the Chamber’s property on the Town’s land; the minutes state only that the Town will “support .the Chamber on this project.” The Town submits that nothing refuted its showing that the wall panels were immov-ables and belonged to the Town.
By its second assignment, the Town urges the court committed manifest error in finding -that the Town did not make out a prima facie case of acquisitive prescription," under La. C.C. art. 3491, by possessing a movablé as owner for 10 years. The Town cites the testimony of Mayor Smith and the employees that the Town performed routine maintenance of the wall, replaced the flags and paid the light bills for over 10 years, while no employees of the Chamber or the Police Jury did anything. - With no evidence to refute this showing, the Town concludes, the court could not possibly grant involuntary dismissal.
The defendants respond that the applicable law is C.C. art. 493: “Buildings, other constructions permanently attached to the ground, and planting made on-the land of another with his consent belong to him who made them.” They urge that all witnesses agreed the wall was constructed by the Chamber on the Town’s property and with the Town’s consent. | (¡Further, the Town’s activities with respect to the wall did not evidence ownership. Finally, they show that an involuntary dismissal is subject to manifest error review, Brooks v. Minnieweather, 46,900 (La.App. 2 Cir. 1/25/12), 86 So.3d 684, writ denied, 2012-0467 (La.4/13/12), 85 So.3d 1251, and submit that the district court’s interpretation .of the testimony and documents was reasonable.

Discussion

The motion for involuntary dismissal is defined by La. C.C.P. art. 1672 B:
.In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not *27 granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
A motion for involuntary dismissal requires the trial court to evaluate all the evidence presented by the plaintiff and render a decision based on a preponderance of the evidence. Taylor v. Tommie’s Gaming, 2004-2254 (La.5/24/05), 902 So.2d 380; Coordinating & Dev. Corp. v. D.H. Patten Children Co., 47,000 (La.App. 2 Cir. 2/29/12), 87 So.3d 214. Proof by a preponderance means that the evidence, taken as a whole, shows that the fact or cause sought to be proved is more probable than not. Hebert v. Rapides Parish Police Jury, 2006-2001 (La.4/11/07), 974 So.2d 635; Bartley v. Fondren, 43,779 (La.App. 2 Cir. 12/3/08), 999 So.2d 146. The plaintiff opposing a motion for involuntary dismissal is entitled to no ^special inferences in his favor. Crowell v. City of Alexandria, 558 So.2d 216 (La.1990); Coordinating. & Dev. Corp., supra. The appellate court will not reverse an involuntary dismissal in the absence of manifest or legal error. Roberson v. Chance, 50,169 (La.App. 2 Cir. 11/18/15), 182 So.3d 203, and citations therein.
Ordinarily, buildings and other constructions permanently attached to the ground are component parts of a tract of land when they belong to the owner of the ground; however, they are separate im-movables when they belong to a person other than the owner of the ground. La. C.C. arts. 463, 464; Eagle Pipe & Supply Inc. v. Amerada Hess Corp., 2010-2267 (La.10/25/11), 79 So.3d 246, 174 Oil & Gas Rep. 32, fn. 56. Things incorporated into a tract of land so as to become an integral part of it, such as building materials, are its component parts. La. C.C. art. 465; Broussard v. State, 2012-1238 (La.4/5/13), 113 So.3d 175.
Buildings and other constructions permanently attached to the ground may belong to a person other than the owner of the ground; nevertheless, they are presumed to belong to the owner of the ground, unless separate ownership' is evidenced by an instrument filed for registry in the conveyance records of the parish in which the immovable is located. La. C.C. art. 491; Rivet v. LeBlanc, 600 So.2d 1358 (La.App. 1 Cir.), writ denied, 605 So.2d 1115 (1992). This court has referred to Art. 491 as a “general principle.” Ark-La-Miss Timber Co. v. Wilkins, 36,485 (La.App. 2 Cir. 12/11/02), 833 So.2d 1154. However, buildings and other construe-, tions permanently attached to the ground “of another with his consent belong to him who made |8them.” La. C.C. art. 493; Giorgio v. Alliance Operating Corp., 2005-0002 (La.1/19/06), 921 So.2d 58, 166 Oil & Gas Rep. 34. They belong to the owner of the ground when.they are made without his consent. Id.
On close review we find no manifest error in the district court’s ultimate conclusion that the Town did not own the wall. The Town has very ably shown that in 1999 the council agreed to “support” the Chamber with the project; the granite panels were firmly affixed to a concrete slab on the Town’s property; the Town provided lawn care, electricity and general upkeep of the property for nearly 14 years; and, significantly, there was no deed, déclaration or other legal document stating the ownership of the wall. However, the evidence easily preponderates ‘ to show that the Town was not - the owner. Council minutes from 1999 clearly referred to a memorial that the Chamber “wants to *28 have built” beside the gazebo; newspaper reports stated that the Chamber planned the project and solicited donations from members and private citizens to pay for the slabs;' the Chamber actually paid for the slabs and had them installed at the depot site; the Chamber filled the wall with plaques purchased by local citizens; in September 2013, the Police Jury unanimously voted to move the wall, without objection from the Town; and the Police Jury paid for the relocation. Significantly, Mayor Smith testified that the Town always did whatever the Chamber asked.
On this evidence, the district court was entitled to find that the Chamber, on behalf of the contributing citizens, owned the wall and placed it on the Town’s property with the Town’s consent. This finding satisfies Art. 493’s provision that buildings or other constructions permanently | flattached to the ground, made on the land of another with his consent, belong to him who made them. This court has recognized that the presumption of unified ownership in Art. 491 is a “general principle.” Ark-La-Miss Timber Co. v. Wilkins, supra. A finding that the landowner consented to let someone else place a building or other construction on his property obviates any consideration of the presumption. The district court’s conclusion to this effect is not legally erroneous.
With this finding it is not necessary to address the second assignment, which asserts the acquisitive prescription of La. C.C. art. 3491. We would only note that even if the wall were considered movable property, the evidence would support a finding that the Town was a precarious possessor, having possession of the granite panels on behalf of the owner, La. C.C. art. 3437. Acquisitive prescription does not run in favor of a precarious possessor or his universal successor. La. C.C. art. 3477; Boudreaux v. Cummings, 2014-1499 (La.5/5/15), 167 So.3d 559. We find no error in the grant of involuntary dismissal.

Conclusion

For the reasons expressed, the judgment is affirmed. Appellate costs of $324.50 are to be paid by the Town of Arcadia.
AFFIRMED.