PITMAN, J.
Defendants Lester L. Jones and Ed White Sr., L.L.C. ("the LLC"), appeal a judgment which granted an injunction prohibiting them from entering or disturbing the house and other outbuildings constructed by Lawrence Edmond White ("LEW"), and currently occupied by heirs of his succession ("the succession"), on 160 acres of land owned by the LLC, until further order of the court. The judgment also recalled and vacated a judgment of eviction obtained by the LLC against the occupant of the house and outbuildings and granted the heirs of LEW the right to use, possess and occupy them until further order of the court. Although the judgment addressed other issues, they were not raised in this appeal. For the following reasons, we affirm the judgment of the trial court.
FACTS
Ed White, Sr., and his wife owned 160 acres of land in Claiborne Parish located in the NE ¼ of Section 16, Township 23N, Range 7W. After his death, his wife was recognized in his succession's judgment of possession, rendered in December 1953, as the owner of a ½ interest in the 160 acres, and his nine children were recognized as owning a 1/18 interest each.
Through various unestablished transactions, Claiborne Manor Nursing Home, Inc., acquired an interest in the property through a sheriff's deed dated December 15, 1999. After the nursing home acquired its interest in the property, 12 owners of the 160 acres created the LLC and each donated his interest in the 160 acres to the LLC. Although no cash exchanged hands, the transfers appear in a document entitled "cash deed" filed in the Claiborne Parish Conveyance Records on September 12, 2001, which stated that they were conveying their interest "together with all and singular improvements thereon and all rights thereunto belonging." Although the document is styled as a cash deed, the consideration for the transfer of ownership states it is made,
TO HAVE AND TO HOLD said described property unto said purchaser, its heirs and assigns forever.
*579 This sale is made for the consideration of an ownership interest in ED WHITE, SR., L.L.C. proportionate to the interest owned in the land [.] (Emphasis added.)
Once the LLC was formed, it purchased the nursing home's interest in the 160 acres by cash deed dated September 25, 2001, to reconsolidate ownership in the family LLC. Jones was named as its manager. At the time of the creation of the LLC, all 12 of the transferees to the LLC were direct lineal descendants of Ed White, Sr. One of these transferees was LEW. He was the only transferee who lived on the 160 acres when the LLC was established and at the time he transferred his interest in the land in return for a 5.6 percent interest in the LLC and its assets. He reinforced his continuous possession and use of the land by improving the home in which he was living and by moving various other buildings, workshops, and storage units (collectively, "the buildings") on the land. None of the other members of the LLC or Jones ever challenged LEW's right to live on the property, and LEW never sought permission to do so since he had lived there for many years before and after the LLC was created.
When the LLC was created, LEW was not given an increased percentage in the LLC or additional compensation for the value of the buildings on the property. Those improvements were separately assessed to him by the Claiborne Parish Tax Assessor as owner until one week following his death on May 26, 2014. On June 2, 2014, Jones unilaterally directed the tax assessor to change the assessment of the buildings in the parish records from LEW to the LLC.
The land and buildings were appraised in 2016, and the total value was $440,000, with LEW's house being valued at $139,932, and the other buildings at $15,000, for a total of $154,932. The remaining value of $285,068 was attributed to the land. The value LEW had in the buildings at the time he made his transfer to the LLC was not established.
LEW's daughter, and administratrix of his succession, Audrey White Wiley, filed the succession in Claiborne Parish and alleged that LEW had three children, Audrey White Wiley, Margaret Ann White and Shaneque Sherill White. Following LEW's death, Audrey gave Margaret permission to occupy LEW's home. Although it is unclear, LEW's heirs believed they were entitled to occupy the home since it was their father's property, and so they put up a "No Trespassing" sign, but Jones believed the property had reverted to the LLC at LEW's death and, therefore, belonged to the LLC.
Jones began the process of evicting LEW's heirs from the property. In addition to having the tax assessor change the assessment to the LLC, he sent a demand letter to Audrey and Margaret stating that they had no right to be in their father's home despite the fact that all of his personal assets were there.
On July 8, 2014, Gwendolyn Livingston, a member of the LLC, filed a petition for eviction against the heirs of LEW. On August 28, 2014, Audrey received a judgment of eviction signed by a justice of the peace ("JOP") ordering delivery of the home on August 25, 2014. LEW's heirs claim they never received any notices pertaining to the eviction proceeding and did not appear at the hearing held before the JOP.
As a result of receipt of this judgment of the JOP, the succession filed this suit against Defendants. It claimed that during his lifetime, LEW was not advised that anyone was claiming ownership of the buildings and that the LLC did not pay him for them when it only gave him compensation *580 of the 5.6 percent ownership in the LLC. Further, it claimed that the deed contained inadvertent language that did not identify what he was conveying as reflected by the fact that, thereafter, he was taxed 100 percent for the buildings. It also claimed that Jones's unilateral change in the tax assessment was fraudulently made without legal authority. It requested that the succession at least be compensated for the value of the buildings LEW had placed on the land. For these reasons, it prayed for review of the judgment of eviction from the JOP, for an injunction as to the relief granted by the JOP pending the trial on the merits, and that an injunction be issued prohibiting Jones and any member of the LLC from entering upon LEW's property, including all of his buildings, equipment and vehicles, and ordering them to return all assets they had already removed.
The succession filed a motion for partial summary judgment on the issue of whether the transfer to the LLC included the separate immovable buildings without further payment for them and whether extra consideration should be paid or the sale rescinded. It claimed that these issues could be determined by the trial court since there were no genuine issues of material fact as to the effect of the transaction from LEW to the LLC.
A hearing was set on the injunctive relief request for October 13, 2014; however, it was continued at Defendants' request. At a status conference in March 2017, the parties agreed that the full case and the succession's motion for summary judgment would be heard on March 16, 2017. On that date, the record was held open for Defendants to obtain and submit another appraisal or to evaluate the succession's appraisal; however, they never provided another appraisal, and the court considered the matter to be submitted for decision.
The trial court examined two succession records, those of Ed White, Sr., and LEW; 18 of the succession's exhibits; and 4 of Defendants' exhibits. At the trial, Jones testified that he never told LEW to move off the property in the years after the formation of the LLC. In a letter he wrote to the members of the LLC, dated April 8, 2004, he stated that the reason to establish the LLC as owner of the 160 acres was:
To secure, control and protect the property against unwanted intrusion or unwarranted threats to Family ownership without jeopardizing the personal obligations of the family.
In the same letter, he addressed the need for future LLC leadership and stated that LEW was the only family member who lived on the property and knew the conditions on the property.
After considering the evidence and applicable law, the trial court denied the succession's motion for summary judgment because there were genuine issues of material fact in dispute.
Further, the trial court recalled and vacated the judgment of eviction by the JOP and granted the succession's request for injunctive relief. It also concluded that LEW's heirs, or any one of them, could personally occupy and use the buildings as long as their use and occupancy were consistent with their father's and as long as the occupant(s) are exclusively in direct lineal descent of LEW. It noted that it found LEW was justified in believing the buildings were his separate property and that they did not convey with the land when it was transferred to the LLC.
The trial court's reasons for judgment state that although buildings are deemed component parts of land when they belong to the owner, the Louisiana Civil Code *581 envisions that buildings on property of another can be separately owned by the builder if they are built with the landowner's consent. Its reasons also note that owners of separately owned buildings can file a document in the clerk of court's office in the parish in which the land lies to put third persons on notice that their buildings are separately owned. Co-owners do not have to be put on notice by documentation filed in the office of the clerk of court.
The trial court also found that LEW and the LLC were not co-owners of the property. It determined that LEW was the separate owner of the buildings on the land and that the LLC had full ownership of the land. Thus, it was necessary to determine if the LLC, as a third party, had given consent to LEW to maintain his buildings on its property. The trial court found that the LLC gave its implied consent to LEW to maintain his buildings. It further found that LEW's use and possession of the buildings was never disturbed by Jones or any of the LLC members from 2001, when the 12 people transferred their interests to the LLC, or thereafter, while LEW was alive. It found that it was not until after LEW's death that the LLC disturbed that exclusive use and possession by attempting to evict LEW's heirs. It stated that LEW had reason to consider himself to be the owner of the buildings located on the acreage he co-owned with the other 11 transferrors to the LLC.
The succession had made claims for rescission of the "cash deed" if the trial court should find that the transfer of the land also transferred the buildings. It also asked, alternatively, that it be reimbursed for the value of the buildings. The trial court denied the succession's request for damages for the cost of the buildings as premature because LEW had not filed the document asserting his separate ownership of them sufficient to give notice to the LLC that they were his. Likewise, it denied Defendants' claim asserting ownership of the buildings since they had failed to comply with La. C.C. art. 493. It further found that Jones's action in having the tax assessor change the title to the property to the LLC's name and in filing the petition for eviction were not sufficient actions to assert ownership of LEW's buildings. For these reasons, it denied any other relief sought by the parties.
Jones and the LLC have filed this appeal seeking review of the trial court's decision regarding ownership of the buildings on the property belonging to the LLC, which resulted in the recalling and vacating of the eviction and the issuance of the injunction, allowing the heirs of LEW to remain on the property.
DISCUSSION
Defendants argue that when LEW was living on the property, he deeded all of his interest, including all the buildings, to the LLC. They also argue that although LEW knew he was living on LLC property and had conveyed all his interest in the property to the LLC, he never filed an instrument in the registry of the appropriate conveyance or mortgage records of the parish in which the property was located to indicate his separate ownership of the buildings placed on the land. They further argue that the LLC operating agreement gave Jones the authority to evict LEW's daughter since LEW had signed the cash deed and transferred his ownership interest and improvements to the LLC. They assert that LEW always lived on the property as an heir of his father, and it was understood that he lived there "without authority or permission to live there." They contend that the LLC was formed as a result of the loss of ownership of the property to the nursing home and that the *582 heirs of Ed White, Sr., formed the LLC to prevent such loss of ownership in the future. They claim that if LEW had transferred only his interest in the land, and not the buildings on the land, the purpose of formation of the LLC would have been defeated.
The succession argues that LEW separately owned the buildings and improvements on the property at the time of the 2001 transfer to the LLC. It admits that the deed states that the transfer incudes LEW's interest in the 160 acres, "together with all and singular improvements thereon and all rights thereunto belonging." However, it argues that if LEW's buildings were transferred in that deed, then LEW received no consideration for that transfer. The consideration of 5.6 percent interest in the LLC was totally insufficient to compensate him for the value of the buildings already on the land or for those placed there after the LLC was created.
The succession further argues that LEW's history on the property indicates that he believed he separately owned the buildings even though he transferred the land to the LLC, and evidenced by the facts that he lived there without challenge by any person who was a member of the LLC, that the taxes on the buildings alone were assessed entirely to him and not to the LLC, that the land was separately assessed to the LLC, and that it was not until after his death that the LLC took any action to indicate that it considered itself to be the owner of the buildings that were placed on the property with the LLC's apparent consent.
Defendants assert that the trial court erred in finding that LEW had not transferred ownership of the buildings when he signed the deed transferring his interest in the land "and improvements" to the LLC and in finding that he maintained separate ownership of these buildings, which rights of ownership were inherited by his children upon his death.
In the case of ambiguity in a contract, where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown. Campbell v. Melton , 01-2578 (La. 5/14/02), 817 So.2d 69 ; BRP LLC (Delaware) v. MC Louisiana Minerals LLC , 50,549 (La. App. 2 Cir. 5/18/16), 196 So.3d 37.
In the case at bar, the trial court had to make factual findings interpreting the contract by which LEW transferred to the LLC his interest in the 160 acres of land, which also contained the clause "with improvements." Despite the presence of that clause, it found that LEW did not receive any more compensation for his buildings on the land than did other LLC members who did not own any buildings, that he never received notice from the LLC members that they assumed the buildings had transferred with the deed to the land, and that the LLC did not pay the taxes on the buildings and only asserted ownership over the improvements after LEW's death. These are factual findings that are not to be disturbed unless manifest error is shown. We find no such manifest error and must proceed to review the trial court's application of the law in this case.
Tracts of land with their component parts are immovable. La. C.C. art. 462. Buildings and other constructions permanently attached to the ground are component parts of a tract of land when they belong to the owner of the ground. La. C.C. art. 463. Revision Comment (b) to La. C.C. art. 463 states that classification of buildings or other constructions as component parts of a tract of land does not determine the question of ownership of buildings and other constructions. That question is determined under the rules *583 governing acquisition of ownership by juridical act, prescription or accession. Separate ownership may be asserted toward third persons when it is evidenced by an instrument filed for registry in the conveyance records of the parish in which the immovable is located. La. C.C. art. 491.
The transfer or encumbrance of an immovable includes its component parts. La. C.C. art. 469. However, this is true only when they belong to the owner of the ground. They are not component parts of a tract of land when they belong to a person other than the owner of the ground. La. C.C. art. 463, Revision Comment (b).
In that portion of the Louisiana Civil Code that deals with modifications of ownership, art. 477 defines ownership as the right that confers on a person direct, immediate, and exclusive authority over a thing. Buildings and other constructions permanently attached to the ground made on the land of another with his consent belong to him who made them. They belong to the owner of the ground when they are made without his consent. La. C.C. art. 493 ; Town of Arcadia v. Arcadia Chamber of Commerce , 50,564 (La App. 2 Cir. 4/13/16), 195 So.3d 23.
After examining the law and the facts, the trial court concluded that LEW's buildings were his separate property, built on the land of the LLC with its permission. At the trial, Jones, the only witness, testified that LEW had always lived on the land prior to the formation of the LLC, no permission to live there was asked and none was given. The issue of whether he had permission to live there was never raised. There was obvious evidence of LEW's intention to occupy the property. He not only made improvements to the house, he also built other structures on the land. With no word coming from the manager of the LLC, or any of its members, LEW could presume implied consent to improve his separate property was given. For those reasons, the assignment of error regarding the interpretation of the cash deed and the non-transference of LEW's separate property is without merit, and the judgment vacating the eviction and issuing an injunction is affirmed.
CONCLUSION
The judgment of the trial court recalling and vacating the eviction previously rendered by the justice of the peace, and issuing an injunction prohibiting Defendants Lester L. Jones and Ed White, Sr., L.L.C. from interfering with the heirs' possession of the buildings owned by the Succession of Lawrence Edmond White, is affirmed. Costs of the appeal are assessed to Defendants, Lester L. Jones and Ed White, Sr., L.L.C.
AFFIRMED.